FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
JACKSONVILLE DIVISION  2008 DEC 31  P 2: 11

AMERICAN HERITAGE LIFE INSURANCE )
COMPANY, a corporation; FIRST COLONIAL )
INSURANCE COMPANY, a corporation, )
                             )
      Plaintiffs, )
                             )
vs. )                 CIVIL ACTION NO. _____
                             )        3:08cv-1255-J-25MCR
SOUTHWEST REINSURE, INC., a corporation; )
SANDIA LIFE & CASUALTY INSURANCE )
COMPANY, LTD., a corporation, )
                             )
      Defendants. )

---

## COMPLAINT TO COMPEL ARBITRATION

---

Pursuant to 9 U.S.C. § 4, Plaintiffs American Heritage Life Insurance Company ("AHL") and First Colonial Insurance Company ("First Colonial") (collectively "Plaintiffs") file this Complaint to Compel Arbitration against Southwest Reinsure, Inc. ("Southwest Re") and Sandia Life & Casualty Insurance Company, Ltd. ("Sandia") (collectively "Defendants"). Plaintiffs request that the Court enter an Order pursuant to 9 U.S.C. § 4 compelling arbitration of Defendants' counterclaims asserted in the lawsuit styled *American Heritage Life Insurance Co. v. Southwest Reinsure, Inc., et al.*, Case No. 07-1146 BRB/RHS, originally filed in the United States District Court for the District of New Mexico ("underlying action"), wherein Southwest Re and Sandia are defendants/counterclaim

plaintiffs.[1]  Plaintiffs further request that the Court enjoin the proceedings in the underlying action, only as they pertain to the counterclaims in the underlying action, pending final and binding resolution of the counterclaims in arbitration.  As grounds for this Complaint, Plaintiffs state the following:

## PARTIES, JURISDICTION, AND VENUE

1.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship among the parties and Plaintiffs believe that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.      Plaintiff AHL is a corporation organized under the laws of the State of Florida with its principal place of business in Jacksonville, Florida.  AHL is, therefore, a citizen of the State of Florida for diversity purposes.

3.      Plaintiff First Colonial is a corporation organized under the laws of the State of Florida with its principal place of business in Jacksonville, Florida.  First Colonial is, therefore, a citizen of the State of Florida for diversity purposes.

4.      Defendant Southwest Re is a corporation organized under the laws of the State of New Mexico with its principal place of business in Albuquerque, New Mexico.  Southwest Re is, therefore, a citizen of the State of New Mexico for diversity purposes.

5.      Defendant Sandia is a foreign corporation organized under the laws of the Turks & Caicos with its principal place of business in Albuquerque, New Mexico.  Sandia is, therefore, a citizen of the Turks & Caicos and the State of New Mexico for diversity purposes.

---

[1] A true and correct copy of the Counterclaim, along with Exhibit A attached thereto, filed by Defendants in the underlying action is attached hereto as Exhibit 1.

2

6.     Defendants are subject to the personal jurisdiction and process of this Court. Accordingly, pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court.

## FACTS AND RELIEF SOUGHT

7.     In the underlying action, Defendants allege in their counterclaim that AHL and First Colonial breached a Service Agreement, made effective May 1, 1990, and entered into between AHL and Southwest Re.[2] (*See* Ex. 1, Countercl. ¶¶ 33-39.) Southwest Re also alleges in a separate count of the counterclaim that AHL and First Colonial tortiously interfered with its business relationship with certain producer-owned reinsurance companies as a result of the termination of the Service Agreement. (*See id.* ¶¶ 40-49.)

8.     The Service Agreement requires arbitration of disputes arising from the agreement.   (*See* Ex. 1, Countercl. at Ex. A, Article XI, § 11.08, attached thereto.) Specifically, the arbitration provision provides as follows:

> Any dispute which may arise between [Southwest Re] and AHL under this Agreement shall be settled by an equitable rather than a strictly legal interpretation.

(*See id.*)

9.     Southwest Re accepted the terms and conditions of the Service Agreement, including the parties' agreement to submit all claims arising under the Service Agreement to binding arbitration.

10.     Although Sandia was not a signatory to the Agreement, Sandia nonetheless asserts a breach of the Service Agreement as a counterclaim plaintiff in the underlying action.  Consequently, Sandia is equitably estopped from selectively ignoring the arbitration

---

[2] First Colonial was added as a party to the Service Agreement by amendment on September 1, 1995. (*See* Ex. 1, Countercl. at Ex. A, Amendment No. 3, attached thereto.)

agreement while seeking certain benefits under the Service Agreement. *See Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005).

11.     By filing the underlying counterclaims, Defendants breached the arbitration agreement, which requires that the counterclaims in the underlying action "be settled by an equitable rather than a strictly legal interpretation." (*See* Ex. 1, Countercl. at Ex. A, Article XI, § 11.08, attached thereto.)

12.     Section 2 of the Federal Arbitration Act provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

13.     The controversies that are the subject of this action arise from contracts or agreements that involve interstate commerce and that fall within the scope of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

14.     Section 4 of the Federal Arbitration Act provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

15.     Pursuant to 9 U.S.C. § 4, Plaintiffs request that the Court enter an Order enforcing the arbitration agreement and compelling arbitration of Defendants' counterclaims in the underlying action. *See Community State Bank v. Strong*, 485 F.3d 597, 618-19 (11th Cir. 2007).

16.     Pursuant to the All Writs Act, 28 U.S.C. § 1651, the Court has the jurisdiction and authority to enjoin the proceedings in the underlying action as they relate to the Defendants' counterclaims.

17.     In conjunction with the relief sought by AHL and First Colonial, the Court should (i) stay further proceedings in the present action pending the conclusion of arbitration to enable the Court to enter a judgment on the arbitration award with respect to the counterclaim, and (ii) enter an order enjoining the underlying action, as it relates to Defendants' counterclaims, pending arbitration.

## PRAYER FOR RELIEF

WHEREFORE, AHL and First Colonial are entitled to, pray for, and demand a judgment:

1.     Ordering, directing, and compelling Defendants to arbitrate the counterclaims asserted in the underlying action in accordance with the arbitration agreement included in the governing Service Agreement;

2.     Enjoining Defendants from proceeding in the underlying action and from taking any further action outside the arbitration with respect to Defendants' counterclaims against AHL and First Colonial;

3.   Staying further proceedings in the present action pending the conclusion of arbitration of Defendants' counterclaims against AHL and First Colonial; alternatively, dismissing the present action, without prejudice, upon entry of an Order compelling arbitration of the counterclaims asserted in the underlying proceeding; and

4.   Granting AHL and First Colonial such other and further relief as to which the Court deems appropriate and just.

Robert T. Hyde, Jr.
Florida Bar. No.: 199990
ROGERS TOWERS, P.A.
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
Telephone:   (904) 398-3911
Fax:             (904) 396-0663
E-mail:        bhyde@rtlaw.com

Attorneys for American Heritage Life Insurance Company and First Colonial Insurance Company

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

```
-----------------------------------------------------------X
```
AMERICAN HERITAGE LIFE INSURANCE   :
COMPANY, a corporation   :
   :
      Plaintiff,   :
   :
vs.   :  Case No.: CIV 07-1146 BRB/RHS
   :
SOUTHWEST REINSURE, INC., a corporation;   :
SANDIA LIFE & CASUALTY INSURANCE   :
COMPANY, LTD., a corporation;   :
DESIGNED LEADERSHIP, INC., a corporation;   :
JAMES B. SMITH, an individual;   :
and GREG MIRABILE, an individual,   :
   :
      Defendants.   :
```
-----------------------------------------------------------X
```

## COUNTERCLAIM

Counterclaim Plaintiffs, Southwest Reinsure, Inc. ("Southwest Re") and Sandia Life & Casualty Insurance Company, Ltd. ("Sandia"), by and through their undersigned attorneys, sue Counterclaim Defendants, American Heritage Life Insurance Company ("AHL") and First Colonial Insurance Company ("First Colonial"), and allege as follows:

### GENERAL ALLEGATIONS

#### Parties and Jurisdiction

1.     Counterclaim Defendant AHL is a Florida corporation with its principal place of business in Jacksonville, Florida. AHL transacts business in the state of New Mexico.

2.     Counterclaim Defendant First Colonial is a Florida corporation with its principal place of business in Jacksonville, Florida. First Colonial transacts business in the state of New Mexico.

3.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and Counterclaim Defendants are subject to the personal jurisdiction and process of this Court.

**AHL's Fronting Relationship with PORCs**

4.  Beginning in the 1990's, Counterclaim Defendant AHL, now an affiliate of The Allstate Corporation, entered into a "fronting" relationship through the workings of Counterclaim Plaintiff Southwest Re whereby AHL served as a direct writer of credit insurance policies sold by automobile dealer (producer) clients of Southwest Re to consumers as part of vehicle sales transactions ("Credit Business"), and then ceded the underlying risk back to certain off-shore reinsurance companies known as "Producer-Owned Reinsurance Companies" ("PORCs") pursuant to direct reinsurance agreements between AHL and the PORCs.

5.  The PORCs were formed and managed by Southwest Re on behalf of its automobile dealer clients.

6.  Originally, 100% of the Credit Business was ceded from AHL to Colonial Reinsurance, Ltd. ("Colonial Re"), a reinsurance company owned by AHL, and then ceded to the PORCs by Colonial Re.  According to AHL, Colonial Re functioned as an intermediary such that AHL could avoid reporting reinsurance transactions with hundreds of separate PORCs on its NAIC Annual Statement.  In July 2001, however, AHL assumed all of the gross policy obligations of Colonial Re and directly ceded all Credit Business risk to the PORCs without the use of an intermediary.

7.  Under the fronting arrangement described supra, AHL ceded 100% of the risk and associated premiums to the PORCs (either directly or through Colonial Re), and in exchange for directly writing the Credit Business, received 2.5% of the net premiums written as a fronting fee.

2

8. Each PORC established a trust account, under the control of AHL or one of its affiliates, into which the reinsurance premiums received (net of commissions or other fees or allowances) were deposited ("Trust Account"). AHL used these Trust Accounts to take credit on its financial statements for the reinsurance ceded to the individual PORCs.

9. Eventually, another affiliate of The Allstate Corporation, Counterclaim Defendant First Colonial, also fronted Credit Business for some of the same PORCs served by AHL.

10. When a PORC's Credit Business exceeded its retained limits, Counterclaim Plaintiff Sandia assumed that portion of the Credit Business taking an excess risk position ("Excess Risk Position") and in return received the exact proportionate amount of premium associated with that portion of the business.

**Surplus Strain and Relief**

11. The Credit Business was issued on a single premium basis, which was paid up front when the policy is written by AHL.

12. Due to the combination of high acquisition costs and the reserve requirements related to the single premium nature of this business, a writer of credit insurance, in the normal course of business, will experience a surplus strain when the insurance is first written. A reinsurer of 100% of a block of credit insurance will experience the same surplus strain because the single premium, reduced by commissions paid, is then inadequate to fully provide for the required reserve liabilities associated with the entire premium amount.

13. As reinsurers of 100% of the Credit Business, the PORCs experienced the above-described surplus strain. In order to relieve this strain, the PORCs retroceded Credit Business premiums and the related reserve liabilities to AHL on a quarterly basis ("Surplus Relief"). For these

3

retrocessions, AHL charged the PORCs a "surplus relief charge" in the amount of 1.00% quarterly (4.00% annually) of the unearned premiums retroceded.

14.      Sandia also charged the PORCs an additional 0.50% of net premiums quarterly for surplus relief, which charge was retained in Sandia.

**Southwest Re's Administration of the Credit Business**

15.      Effective May 1, 1990, AHL and Southwest Re entered into a written administrative services agreement ("Service Agreement"). See attached **Exhibit A, Service Agreement**.

16.      Southwest Re functioned as the third-party administrator ("TPA") of both the insurance and the reinsurance on the Credit Business, and provided all administration of the Credit Business, including premium receipts and processing, claims adjudication and processing, financial reporting, and reinsurance reporting and accounting for AHL, Colonial Re, Sandia and the PORCs. Importantly, Southwest Re, as TPA, was in charge of reserve development.

17.      First Colonial became a party to the Service Agreement effective September 1, 1995. See Exhibit A at Amendments to Service Agreement 3 & 3(a).

**Conversion to Xycor & Repointing of Reserve Liabilities**

18.      In late 2001/early 2002, AHL developed and implemented a policy administration system known as "Xycor" ("Xycor System"). Despite Southwest Re's continued responsibility as designated TPA, AHL required the use of the Xycor System in the administration of the Credit Business, which in turn, resulted in AHL's development and management of reserve information instead of Southwest Re's development and management of same. Thus, AHL took the responsibility of reserve development described supra from Southwest Re, and forced Southwest Re to use the reserve information developed by AHL in Southwest Re's administration of the Credit

4

Business.

19.      Additionally, AHL only allowed Southwest Re limited access to the Xycor System. In its implementation of the Xycor System, AHL converted all of Southwest Re's business to an "Agency" accounting level, rather than at a "Company" accounting level. In doing this, AHL restricted Southwest Re's access to many of the Xycor System functions, including the ability to track and make changes within the Xycor System which were necessary to perform Southwest Re's function as TPA. Southwest Re was effectively denied the ability to properly process and administer the Credit Business, and other business not written or reinsured by The Allstate Group, but nonetheless maintained for PORC administration purposes on the Xycor System.

20.      On November 22, 2002, AHL, in violation of its TPA relationship with Southwest Re, unilaterally made changes in the reinsurance tables maintained in the Xycor System that resulted in the transfer of certain reinsurance liabilities of the PORCs of 422 automobile dealer clients of Southwest Re, representing approximately $363,000,000 of Credit Business in force and approximately $23,000,000 of unearned premium reserves ("Reserve Liabilities"). This practice is known in the industry as "repointing."

21.      These Reserve Liabilities were associated with corresponding assets, i.e. cash reserve amounts deposited in the PORC Trust Accounts ("PORC Reserve Assets").

22.      However, AHL transferred, or "repointed," the Reserve Liabilities from the respective PORCs to Sandia with no corresponding transfer of PORC Reserve Assets.

23.      AHL transferred, or "repointed," the Reserve Liabilities to Sandia without notifying Southwest Re or Sandia of these transactions. Southwest Re only learned of the unauthorized transfers upon discovery that the year-end accounting reports for the individual PORCs were not

5

reconciled.

24.     After AHL made these transfers, the Reserve Liabilities were accounted for on the books of Sandia, while the corresponding PORC Reserve Assets were accounted for on the books of the respective individual PORCs.

25.     AHL's repointing of the Reserve Liabilities resulted in the appearance that underwriting profits were available to the PORCs for distribution. Because Southwest Re was unaware of AHL's repointing of the Reserve Liabilities, Southwest Re disbursed PORC Reserve Assets to some of the individual PORCs because the reports for these PORCs showed inadequate Reserve Liabilities.

26.     In or about late 2004, AHL reversed the initial repointing entries. Upon this reversal, the Reserve Liabilities were purportedly properly accounted for on the books of the PORCs, however, there were no corresponding PORC Reserve Assets deposited in the respective PORC's Trust Account due to AHL's improper accounting transactions beginning two years prior.

27.     Despite this reversal of the initial repointing, AHL continues to repoint PORC Reserve Liabilities to Sandia, without Southwest Re, Sandia or the PORC's authorization.

28.     Further, within the Xycor System, AHL partially eliminated the accounting for Sandia's Excess Risk Position which was previously maintained for each of the individual PORCs. As a result, Sandia's reinsurance tables were commingled obliterating the retention limits and excess risk layers previously and properly maintained.

29.     Under the express terms of the Service Agreement, AHL did not have the authority to effect the above-described accounting entries without the consent and the collaboration of Southwest Re.

6

**Unilateral Changes in Reserve Requirements**

30. Beginning in 2002, AHL unilaterally and arbitrarily increased loss reserve requirements, which automatically resulted in an overall increase in the amount of Surplus Relief needed from AHL by Sandia and the PORCs (see supra paragraph 7).

31. On information and belief, AHL changed the method of reserving for losses on the Credit Business without employing any actuarial rationale for the change.

**Termination of Service Agreement**

32. On October 27, 2006, AHL terminated the Service Agreement effective November 26, 2006.

COUNT I

**BREACH OF CONTRACT**

33. Counterclaim Plaintiffs Southwest Re and Sandia re-alleges paragraphs 1 through 32 as if fully alleged herein.

34. Effective May 1, 1990, Counterclaim Plaintiff Southwest Re and AHL entered into that certain written Service Agreement attached hereto as Exhibit A.

35. At all times relevant, Sandia was a known and intended third-party beneficiary of the Service Agreement.

36. In the course of performance of the Service Agreement, AHL took certain actions specifically designed to frustrate Southwest Re's proper performance of same with its customers, which conduct ruined the business considerations for entering the Service Agreement thereby causing Counterclaim Plaintiffs damages..

7

37. Specifically, prior to AHL's termination of the Service Agreement, Counterclaim Defendants breached the Service Agreement by:

    a.    Arbitrarily and unilaterally increasing reserves applicable to the Credit Business;

    b.    Arbitrarily and unilaterally increasing the surplus relief payments under the Service Agreement;

    c.    Arbitrarily and unilaterally repointing Reserve Liabilities within the Xycor System;

    d.    Treating Southwest Re as an agent, rather than a company, within the Xycor System, resulting in restricted access to information concerning Credit Business and improper accounting entries;

    e.    Requiring Southwest Re to relinquish control of the reserve development and utilize AHL's reserve development information to administer and service the Credit Business; and

    f.    Refusing to remit to Southwest Re and Sandia amounts due and owing to them and their customers under reinsurance agreements which were unrelated to the Service Agreement.

38. As a direct and proximate consequence of Counterclaim Defendants' breach of the Service Agreement, Counterclaim Plaintiffs have been damaged.

39. It has been necessary for Counterclaim Plaintiffs to retain counsel in order to prosecute this Counterclaim, and they have agreed to a reasonable fee for counsel's services.

WHEREFORE, Counterclaim Plaintiffs Southwest Reinsure, Inc. and Sandia Life & Casualty Insurance Company, Ltd. demand damages, including reasonable attorney fees, against Counterclaim Defendants American Heritage Life Insurance Company and First Colonial Insurance Company.

## COUNT II

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

40.     Counterclaim Plaintiff Southwest Re re-alleges paragraphs 1 through 32 as if fully alleged herein.

41.     As Southwest Re directly contracted with Counterclaim Defendants for the servicing of the Credit Business described herein, Southwest Re also directly contracted with the PORCs to administer and manage their reinsurance portion of the Credit Business written by AHL (as well as business written by non-Allstate entities).

42.     At all times relevant, Counterclaim Defendants had actual knowledge of the direct business relationship between Southwest Re, its automobile dealer clients, and their respective PORCs.   Specifically, Counterclaim Defendants had actual knowledge that Southwest Re administered and managed the reinsurance portion of the Credit Business held by the PORCs.

43.     After the termination of the Service Agreement, Counterclaim Defendants commenced a course of action intentionally calculated to pirate from Southwest Re the administration of the reinsurance portion of the Credit Business for hundreds of PORCs.

44.     On information and belief, Counterclaim Defendants directly informed Southwest Re's automobile dealer clients and their respective PORCs of its termination of the Service Agreement with Southwest Re, and by their course of dealing, implied that Southwest Re no longer administered or serviced the reinsurance portion of the Credit Business for the PORCs, and directly solicited the PORCs administration business.

45.     Rather than communicating with Southwest Re as administrator for the PORCs, Counterclaim Defendants ignored Southwest Re's continuing role as insurance administrator for its

9

automobile dealer clients and PORCs, ignored AHL's responsibility to communicate with those entities through Southwest Re, and began directly communicating with the PORCs, demanding payments, audits, and financial documentation.

46.     Counterclaim Defendants further refused to pay the PORCs monies due and owing on unrelated lines of business, which were not covered by the Service Agreement, on the ground that Counterclaim Defendants were entitled to offset such amounts allegedly due under the reinsurance agreements between Counterclaim Defendants and the PORCs.

47.     Counterclaim Defendants' purposeful solicitation of the PORC's administration business combined with their intentional interference with Southwest Re's administration of the PORC business constituted an intentional and unjustified interference with a protected business relationship.

48.     Southwest Re have been damaged as a direct and proximate cause of Counterclaim Defendants' intentional and unjustified interference in Southwest Re's protected business relationships with the individual PORCs.

49.     It has been necessary for Counterclaim Plaintiff to retain counsel in order to prosecute this Counterclaim, and it has agreed to a reasonable fee for counsel's services.

WHEREFORE, Counterclaim Plaintiff Southwest Reinsure, Inc. demands damages, including special damages and reasonable attorney fees, against Counterclaim Defendants American Heritage Life Insurance Company and First Colonial Insurance Company.

Dated: December 11, 2008
Jacksonville, Florida

COOPER, RIDGE & LANTINBERG, P.A.

/s/ GEORGE E. RIDGE
William G. Cooper, Esq.
Florida Bar No.: 161233
George E. Ridge, Esq.
Florida Bar No.: 226701
Tiffiny Douglas Safi, Esq.
Florida Bar No.: 682101
136 East Bay Street, Suite 301
Jacksonville, Florida 32202
(904) 353-6555;  (904) 353-7550 (facsimile)
wcooper@attorneyjax.com
gridge@attorneyjax.com
tsafi@attorneyjax.com

- and -

Phillip C. Gaddy, Esq.
2025 San Pedro NE
Albuquerque, New Mexico  87110
(505) 254-9090; (505) 254-9366 (facsimile)
phil@gaddyfirm.com

*Counsel for Defendants, Southwest Reinsure, Inc.,
Sandia Life & Casualty Insurance Company,
Designed Leadership, Inc., James B. Smith, and
Greg Mirabile*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 11, 2008, I electronically filed the foregoing with

the Clerk of the Court by the CM/ECF system which will send a notice of filing to the Electronic

Mail Notice List. There are no manual recipients listed with the Court.

## ELECTRONIC MAIL NOTICE LIST

Jennifer A. Noya, Esq.
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Post Office Box 2168
Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque, New Mexico 87103-2168
jnoya@modrall.com
Tel No: (505) 848-1800
Fax No: (505) 848-1800

Rik S. Tozzi, Esq.
Anthony C. Harlow, Esq.
G. Matthew Keenan, Esq.
Starnes & Atchison LLP
100 Brookwood Place
Seventh Floor
PO Box 598512
Birmingham, Alabama 35259-8512
ach@starneslaw.com
gmk@starneslaw.com
rst@starneslaw.com
Tel No: (205) 868-6000
Fax No: (205) 868-6099

/s/ GEORGE E. RIDGE
Attorney

Agent No. TC-000000

# SERVICE AGREEMENT

This Agreement between American Heritage Life Insurance Company of Jacksonville, Florida (hereinafter referred to as "AHL") and SOUTHWEST REINSURE, INCORPORATED OF ALBUQUERQUE, NEW MEXICO (hereinafter referred to as "SRI") shall be effective May 1, 1990.

### W I T N E S S E T H

WHEREAS, AHL is a life and disability insurer domiciled in the State of Florida and authorized to write such insurance in the states listed on Exhibit I; and

WHEREAS, SRI, through qualification of its officers and employees is uniquely qualified to perform administrative and claim services for AHL in various states and desires to make its personnel, systems, facilities and servicing available to AHL; and

WHEREAS, AHL, to the extent permitted by law, desires to delegate to SRI the administration of and the servicing claims upon the credit life and credit accident and health insurance business set out in Exhibit I, which is attached hereto and made a part hereof, and AHL's subsequent credit life and credit accident and health insurance business produced by agents recommended to AHL by SRI;

NOW, THEREFORE, AHL and SRI, in order to provide for uniform and coordinated administration of the aforesaid insurance and in consideration of the premises and of the mutual agreements and covenants herein contained, do agree as follows, each intending to be legally bound hereby:

### ARTICLE ONE

1.01    This Agreement shall cover all such policies (hereinafter referred to as "such policies") included in marked Exhibit I.  Such policies produced by agents recommended by SRI to AHL for appointment shall be included in Exhibit I.  AHL in its sole discretion may include, or remove, from said Exhibit policies produced by agents other than those described above by giving SRI written notice thereof.  Such written notice shall refer to said Exhibit and by such reference shall be incorporated therein.

### ARTICLE TWO
#### Administrative Duties of SRI

2.01    SRI will recommend to AHL and AHL will be solely responsible for the appointment and termination of general agents, agents and creditor agents (hereinafter referred to as "agents").

2.02    AHL will be responsible for the proper licensing of said agents.  All such agents shall be agents of AHL and not agents of SRI.  SRI will bear the expense of all licensing fees except in jurisdictions whose laws or regulations expressly require direct payment of same by AHL without the right of reimbursement.

2.03    SRI will supply agents and creditor policyholders with proper application forms, certificates, advertising and training material and all other material normally used in the solicitation of credit insurance.  All materials so supplied, which display the logo of AHL or in their text refer to AHL or the insurance which is subject of this Agreement, shall be reviewed and approved in writing by AHL prior to distribution or use by SRI.

2.04    Once each month, SRI shall deliver to AHL a report of all certificates distributed to creditor/group policyholders.  Such reports shall identify the group policyholder by name and identification number as appearing in the records of AHL and shall state, by serial number, the certificates distributed to such creditor/group policyholder.

CA28/wpc/sl/1

EXHIBIT A

2.05    Upon receipt of applications for individual policies of insurance submitted by agents, SRI will promptly underwrite and issue policies in accordance with the underwriting standards of AHL supplied to SRI by AHL from time to time.

2.06    SRI will collect all premiums on business produced by agents and deposit said premiums in accordance with ARTICLE SIX of this agreement.

2.07    SRI shall have authority to establish premium deposit and benefit payment accounts. SRI will make deposits to and issue checks from these accounts as required in performance of SRI's duties herein. Such accounts shall be only for the deposit of premium derived and payment of claims associated with business subject to this agreement. The account will be styled "Southwest Reinsure, Inc. – AHL Premium Deposit Account;" both SRI and AHL will hold signatory authority for the account, but only one signature from either party will be required to transact business for the account.

2.08    SRI shall deliver to AHL, in a form and at such times as are mutually agreeable to AHL and SRI, complete reports of current insurance activity specific as to identification numbers and an activity summary of each agent, on a format mutually agreed upon by SRI and AHL. Concurrent with the execution of this Agreement, AHL and SRI shall in concert prepare a listing of said identification numbers. It is agreed that additions to or deletions from said listing will be made by AHL with immediate notification to SRI. When such additions require use of new Form Numbers, written notification of such new Form Numbers to SRI by AHL and acknowledgement of same by SRI shall constitute inclusion of such new Control Numbers of Exhibit I of this Agreement.

2.09    SRI shall deliver to AHL within twenty-five (25) days after the end of each month, in a form approved by AHL, a monthly Report of Reconciliation including, but not limited to, amounts deposited in the Premium Deposit Account, premiums reported, refunds, commissions and service fees paid, and aged schedule of accounts receivable.

2.10    SRI shall deliver to AHL, within twenty (20) days after the end of each calendar year, and in addition thereto from time to time as requested by AHL, a detailed statement of insurance activity. Said statement shall be in a form mutually agreeable to AHL and SRI and shall include all information necessary for AHL's establishment of statistical information and/or the filing and payment of fees and taxes as required by any and all states, cities, counties and parishes in which business is produced and administered by SRI under the terms of this Agreement.

2.11    Policies, certificates, booklets, termination notices, or other written communications delivered by AHL to SRI for delivery to policyholders or agents shall be delivered by SRI promptly after receipt of instructions from AHL to do so.

2.12    If any state, wherein insurance subject to this agreement is being administered by SRI, requires the licensing or certification of entities performing the service delegated to SRI herein, and SRI and any "other entities" as defined in ARTICLE NINE of this Agreement shall secure and maintain valid licensing or certification so long as SRI or "other entities" provide services to SRI hereunder.

2.13    AHL acknowledges that SRI does not have control over funds held for the benefit of each captive reinsurance company it manages. The final approval and execution of any withdrawal is controlled by the captive and AHL, with ultimate control held by AHL, or its subsidiary, Colonial Reinsurance, Ltd. AHL further acknowledges that all claims related expenses, including investigative services and legal expenses, are the responsibility of the captive reinsurance company, not SRI.

2.14    SRI agrees that disbursements from the premium deposit and benefit payment accounts will be limited to the following:

1. Distribution of premium and related fees (administrative fees to SRI and AHL, premium cessions);

2. Refunds as may from time to time be required due to lack of production by a producer; and

3. Claim payments and related investigative expenses.

2.15   SRI shall, at such intervals as specified by AHL furnish AHL copies of all checks issued. Each check issued will be completely and properly encoded by SRI, as described by AHL. SRI shall issue checks in numerical sequence and voided or canceled checks will be made available to AHL upon request.

2.16   SRI will provide AHL, upon request, with copies of bank account reconciliations for the premium deposit and benefit payment accounts. SRI agrees to make available any and all documentation relating to these accounts as AHL may from time to time require.

## ARTICLE THREE
## Claim Servicing Duties of SRI

3.01   AHL hereby designates SRI as its duly authorized claims representative in connection with claims arising under "such policies". SRI shall be responsible for the handling of all claims arising under "such policies". SRI shall comply with the "Claim Payment Standards" set out in Exhibit II which is attached hereto and made a part hereof and SRI shall at all times employ the claim handling procedures of AHL as those procedures may be communicated to SRI from time to time. In any matter not specifically covered by Exhibit II or AHL's claim handling procedures, SRI shall employ standards of prudent insurance industry practice.

3.02   SRI will establish and maintain adequate facilities and personnel for the processing and payment of all claims upon the business administered by SRI under the terms of this Agreement.

3.03   For each claim submitted to SRI, SRI will cause same to be examined to determine if the coverage is in force; the amount payable; if any, and the proper payee thereof.

3.04   For any claim which in the opinion of SRI is questionable or which requires additional facts in order to make a proper determination, SRI will enlist the services of Equifax or any other investigative service SRI deems appropriate under the circumstances. AHL will allow SRI to access Equifax or similar services through its existing relationship with these providers, and AHL will bill SRI accordingly for the service rendered by each provider. Payment to AHL will be from the captive as outlined in 2.13, and SRI's responsibility for said payment is limited to facilitating payment in a timely manner; SRI cannot be held liable for said payment as AHL holds ultimate control of the funds.

3.05   SRI will maintain claim files and other records in accordance with the regulations issued by the insurance regulatory authorities for the various States in which claims will be serviced and administered by SRI and will make these files and records available to the regulatory authorities or their designated representatives at any reasonable time.

3.06   From time to time SRI shall transfer closed disability and death claim files to AHL in accordance with mutually established schedules and procedures.

3.07   In the event a claim is denied by SRI, SRI shall immediately furnish AHL a copy of the claim file including copies of all pertinent documents dealing with said claim.

3.08   Litigation arising from any claim covered by this agreement shall be prosecuted in the name of AHL and solely by AHL. In the event of litigation of a claim SRI shall immediately surrender control of the claim file to AHL. If summons is served upon SRI, SRI will immedi-

ately forward the entire claim file, all related documents and the summons to AHL at AHL's home office. If summons is served upon AHL, AHL will notify SRI of such summons and SRI will immediately forward the entire claim file and all related documents to AHL, at AHL's home office. Shipment of the original claim file and related documents to AHL shall be by Purolater Courier Corporation, Federal Express or other mutually agreeable method. In all such cases SRI shall retain in SRI's files a photocopy of all items shipped to AHL. Upon receipt of summons, or notification of summons, SRI shall cease all activity relative to the claim in question except in response to subsequent directives from AHL.

3.09   SRI may, before litigation has commenced, compromise claims of doubtful validity when SRI determines that such compromise would be in the best interest of AHL. SRI will, at all times, consult with AHL prior to any compromise in connection with such claims, and SRI will be bound by AHL's decision.

3.10   In all matters of claims administration, when the judgement of SRI is required, SRI and AHL will cooperate in all such matters so that the best interest and reputation of AHL and SRI be preserved.

3.11   SRI shall deliver to AHL, in a form and at such times as are mutually agreeable to AHL and SRI, monthly reports of current claims activity in a format mutually agreed upon by SRI and AHL.

### ARTICLE FOUR
### Maintenance of Records by SRI

4.01   SRI will maintain at its principal administrative office for the duration of this written agreement and five (5) years thereafter adequate books and records of all transactions between it, AHL and insured persons. Such books and records shall be maintained in accordance with prudent standards of insurance record keeping. Such books and records shall remain the sole property of AHL.

4.02   The insurance regulatory authorities of any state shall be given access to such books and records of SRI for the purpose of examination, audit and inspection.

4.03   Any trade secrets contained in such books and records, including the identity and addresses of policyholders and certificate holders, shall be confidential.

4.04   From time to time and any time hereunder, AHL shall be given free and full access to all books, records, accounts, facilities, and personnel of SRI relating to or otherwise involved in SRI's performance of its obligations hereunder; provided, that AHL's review and contact with such books, records, accounts, facilities, and personnel shall be conducted expeditiously and in such manner as to reasonably avoid disruption of SRI's business.

### ARTICLE FIVE
### Rights and Duties of AHL

5.01   During regular business hours AHL shall have the right to inspect the records and methods by which all services performed by SRI as set forth in this Agreement are conducted. All incidental expenses applicable to such inspections shall be borne by AHL.

5.02   AHL will at all reasonable times make available to SRI properly authorized personnel of AHL for the purpose of consultation and decision. In addition, AHL will make available to SRI one of the co-signers on the captive bank accounts for the purpose of executing fund withdrawals so that SRI can properly perform its duties as administrator.

5.03   AHL shall review all forms proposed for use by SRI as set forth in paragraph 2.03 of this Agreement, and written notification to SRI of approval or disapproval shall not be unreasonably withheld.

5.04    AHL will issue group master policies for cases submitted by agents and approved by AHL.

5.05    Upon receipt by AHL of completed forms and applications necessary for AHL's consideration of general agents, agents and/or creditor policyholders recommended to AHL by SRI, and approval of same by AHL, AHL shall apply for all licenses required by the insurance laws and regulations of the state or states involved. Within thirty (30) days of receipt by AHL of licenses from the state or states involved, AHL will provide SRI with contract record sheets specific as to identification numbers and coverages, which SRI shall use in all reports required by this Agreement.

5.06    AHL shall provide SRI with policies and certificates of insurance as required by SRI in performance of its duties hereunder.

5.07    AHL shall be responsible for all policy filings as required by the insurance laws and regulations of the state or states involved. New policy forms as requested by SRI, and approved by AHL, will be filed within twenty (20) working days of initial request by SRI, and will receive sufficient priority from AHL as to complete the policy filing in a timely manner.

ARTICLE SIX
Premium Deposit Account

6.01    The premiums due AHL (as defined in paragraph 6.03 of this Agreement) on policies issued hereunder and on policies in effect as of the date of this Agreement which are subject to the terms of this Agreement and which are set out in Exhibit I of this Agreement (hereinafter referred to as "premiums due") shall be deposited to the Premium Deposit Account by SRI.

6.02    The premiums due AHL will be computed as follows from information received by SRI from general agents, agents, creditor agents and/or credit policyholders (hereinafter referred to as "producers"). From the gross amount of premiums written by producers, said producers will deduct an amount equal to refunds properly made by producers for terminations of certificates and an amount established by AHL and SRI for commissions and/or service fees properly retained by producers. The premiums due AHL will be forwarded from the producers to SRI in check form made payable to SRI. SRI will daily deposit said checks so received into the Premium Deposit Account. SRI shall verify that all such payments from producers are correct and made in accordance with this Agreement.    In the event a producer makes their check payable to AHL, AHL authorizes SRI to endorse said payment as necessary to properly deposit check to said depository account. AHL shall have a right to immediately terminate this Agreement if SRI accepts payment of "premiums due" from any producer in cash. This right of termination will be in addition to and not limited by ARTICLE TWELVE of this Agreement.

6.03    The only funds deposited in the Premium Deposit Account shall be premiums due AHL.

6.04    SRI will furnish AHL copies of all deposit slips verifying deposits to the Premium Deposit Account at intervals to be specified by AHL. SRI will identify, on the face of said verifications, the producer or producers applicable to each verification in an appropriate, mutually agreed manner. SRI will indicate such identification in the monthly "Reconciliation" required under paragraph 2.09 of this Agreement.

6.05    Concurrent with delivery of each "Reconciliation" required in accordance with paragraph 6.04, SRI shall deliver to AHL a report listing all creditor/group policyholders which did not report any premium activity during the period covered by such "Reconciliation".

## ARTICLE SEVEN
### Check Issuance by SRI

7.01   Check forms, upon a financial institution of mutual agreement, shall be used by SRI in the payment of all legitimate refunds, commissions, claims and claim related expenses as specified herein.

7.02   SRI shall provide AHL with several names and signatures, as required by AHL, of personnel of SRI who shall be authorized to sign the checks.

7.03   Checks shall be of two distinct types:

   1.   Miscellaneous Expense Checks
   2.   Claim Payments Checks

7.04   Upon Claim Payment Checks, SRI will pay claims as required by ARTICLES THREE of this Agreement.

7.05   SRI shall not cause issuance of checks for purposes other than those enumerated in paragraph 7.01 above.

7.06   SRI shall, at such intervals as specified by AHL furnish AHL copies of all checks issued.  Each check issued will be completely and properly encoded by SRI, as prescribed by AHL.   SRI shall issue checks in numerical sequence and voided or canceled checks will be surrendered to AHL.


## ARTICLE EIGHT
### Limitation of Authority

8.01   This Agreement does not in any manner authorize SRI to represent to any person, firm or organization that SRI in any way represents AHL for any purpose not specifically covered by the terms of this Agreement.  Violation of this provision by SRI will give AHL the right to immediately terminate this Agreement.   This right of termination will be in addition to and not limited by ARTICLE TWELVE of this Agreement.

8.02   It is agreed and understood that SRI's relationship with AHL is that of an independent contractor and not that of agent, servant or employee.


## ARTICLE NINE
### Delegation of Duties by SRI

9.01   All duties delegated to SRI by AHL under this Agreement may be delegated by SRI to other entities (hereinafter referred to as "other entities"), subject however to the requirements of this ARTICLE NINE.

9.02   It is expressly understood and agreed that SRI shall remain solely and directly responsible to AHL for the proper administration of all such policies and all servicing of claims in strict accordance with this Agreement and the directors of AHL made pursuant hereto whether such administration or servicing are performed by SRI or "other entities".

9.03   Any delegation of duties by SRI to other entities (hereinafter referred to as "other entities") shall be only by written agreement between SRI and any such entity (hereinafter referred to as "such agreement").  Any "such agreement" shall reference this Agreement, shall be subject to prior written approval of AHL and shall be attached hereto and be a part hereof.

9.04   AHL shall be notified, in writing, not less than thirty (30) days prior to the contemplated execution of any "such agreement" between SRI and "other entities".  SRI shall, in good faith, cooperate fully with AHL in AHL's evaluation of the suitability of such "other entities" as acceptable parties to AHL with respect to the duties to be delegated pursuant to "such agreements".  The reasonable costs of

such evaluation, including but not limited to travel, room and board, shall be borne by SRI but shall be subject to prior approval of SRI.

9.05   AHL shall be notified, in writing, not less than thirty (30) days prior to the contemplated amendment or termination of any "such agreement". SRI shall not terminate any "such agreement" until arrangements, suitable to verified and approved by AHL, have been established to adequately provide for uninterrupted performance of SRI's duties under this Agreement.

9.06   If, at any time, AHL determines that an entity, to which SRI has delegated duties, no longer is an acceptable party with respect to the duties delegated, AHL shall notify SRI of the unacceptability of such entity and the reasons of such unacceptability. SRI shall immediately direct said entity to conform its procedures to AHL's requirements. If, thirty (30) days after such directive by SRI, said entity has not conformed to AHL's requirements, AHL may request and SRI shall terminate its Agreement with said entity.

9.07   While any "such agreement" is in effect, AHL may communicate directly with the "other entity" to which SRI has delegated duties and SRI shall not be aggrieved thereby.

9.08   Violation of the provisions of ARTICLE NINE by SRI will give AHL the right to immediately terminate this Agreement. This right of termination will be in addition to and not limited by ARTICLE TWELVE of this Agreement.

### ARTICLE TEN
### Compensation

10.01  As a management fee for the duties and obligations assumed by SRI hereunder, AHL will pay monthly to SRI the fees set out in Exhibit III which is attached hereto and made a part hereof, so long as such payments are not contrary to the insurance laws, rules or regulations of State wherein the premium was written. Premiums as used herein shall be gross premium less premiums refunded.

### ARTICLE ELEVEN
### Miscellaneous

11.01  SRI agrees to indemnify AHL against, and hold AHL harmless from, any expense (including attorneys' fees), judgment, fine and amount paid in settlement arising out of any action, suit or proceeding, whether civil, criminal, administrative or investigative, in connect with the policies issued pursuant to this agreement, which result from any error, omission or act of SRI, including any error, omission or act of SRI's directors, officers, employees, agents or sub-contractors, alleged by the party instituting the action, suit or proceeding to be tortuous, criminal, or otherwise in violation of any statute, regulation or administrative order.

11.02  In the event a complaint is received by SRI from the Insurance Department of any State or is forwarded to SRI by AHL, concerning any claim serviced by SRI or any service performed by SRI hereunder, all pertinent documentation concerning said complaint shall be promptly forwarded to AHL, with SRI's proposed form of response and response thereto shall be made solely by AHL. SRI agrees to act in full cooperation with AHL concerning said response.

11.03  Upon receipt of periodic billing statements from AHL, SRI shall reimburse AHL for all fees paid by AHL pursuant to paragraph 2.02 of this Agreement and SRI shall pay for all supplies provided by AHL pursuant to paragraph 5.07 and 11.05 of this Agreement.

11.04  All such expenses shall be paid by SRI in accordance with the requirements of the billing parties and under no circumstances shall SRI permit any such billing to remain unpaid more than thirty (30) days from the date of invoice.

11.05   Except for policies and certificate provided to SRI by AHL pursuant to paragraph 5.06 of this Agreement, SRI shall provide all other forms, stationery or materials at SRI's expense.

11.06   SRI shall comply with all laws, rules, and regulations of any federal, state, or local governing authority having jurisdiction over SRI's actions hereunder.

11.07   The Agreement may, by mutual consent, be altered in any of its terms by a signed addendum hereto.

11.08   Any dispute which may arise between SRI and AHL under this Agreement shall be settled by an equitable rather than a strictly legal interpretation.   In such cases, the parties will submit their differences to three (3) arbiters:  one (1) to be selected by SRI, one (1) to be selected by AHL, and the third to be selected by the arbiters named by the parties herein.  In the event of disagreement between the arbiters, the decision will rest with the majority.  The decision of the majority of the arbiters, which are not party to this Agreement shall be binding upon the parties herein without appeal. The arbiters will be relieved of all judicial formality and may abstain from the strict rules of law.  Arbitration may be initiated by either SRI or AHL (the petitioner) by written notice to the other party demanding arbitration and naming its arbiter.  The other party (the respondent) shall have ten (10) days after receipt of said notice within which to designate its arbiter.  If the respondent does not name its arbiter within ten (10) days, the petitioner may designate the second arbiter and the respondent will not be aggrieved thereby.  The third arbiter shall be chosen by the two arbiters named by the parties within ten (10) days thereafter and the arbitration shall be held at the place hereinafter set forth ten (10) days after the appointment of the third arbiter.  Should the two arbiters not be able to agree on the choice of the third, then the appointment shall be left to the President of the American Council of Life Insurance. Arbitration shall take place in Jacksonville, Florida.  The expense of arbitration shall be shared equally between SRI and AHL.

11.09   All business conducted pursuant to this Agreement shall be conducted in strict compliance with those standards that have been established as the underwriting or other standards pertaining to the business underwritten by AHL as those standards may exist from time to time.

11.10   AHL retains the right to modify all administrative and claim procedures or to impose further requirements upon SRI, and SRI shall follow all such reasonable directions from AHL.

11.11   This Agreement shall be construed and enforced in accordance with the laws of the State of Florida.

ARTICLE TWELVE
Termination

12.01   This Agreement may be terminated with or without cause, upon thirty (30) days written notice by either party to the other.  Written notice by certified mail shall be effective for such purpose.  After such termination SRI will not recommend agents for appointment by AHL nor will SRI be responsible for the administration of the business written by agents after the effective date of termination of this Agreement or the processing of claims submitted after such date unless continuation of services in accordance with paragraph 12.02 is requested by AHL and agreed to by SRI.

12.02   SRI, if requested by AHL and SRI agrees, will continue all duties and obligations assumed hereunder for all business written prior to termination of this Agreement; however, additional covered persons insured under group policies previously written will not come within the terms of this continuation of duties.

12.03   Unless the parties agree for a continuation of SRI's duties in accordance with paragraph 12.02, SRI will, at SRI's own expense, promptly deliver to AHL, after the effective date of termination of this Agreement, all records, files, supplies and equipment of AHL.

12.04   In the event of the bankruptcy or insolvency of either party, this Agreement may be immediately terminated upon written notice to the insolvent or bankrupt party.   In the event of the bankruptcy or insolvency of AHL, SRI will promptly deliver to AHL all necessary records, supplies and equipment held by SRI but belonging to AHL.   In the event of the bankruptcy or insolvency of SRI, such records will be delivered to any person, firm or corporation designated by AHL.

### ARTICLE THIRTEEN
### Notice

13.01   For any notice required as specified in this Agreement, such notice shall be sufficient if addressed, with first class postage prepaid, and deposited in the mail as follows:

To Administrator:     Southwest Reinsure, Incorporated
                      2400 Louisiana Blvd., NE, Bldg. 5, Suite 605
                      Albuquerque, New Mexico  87110-0250

                      Attention: James B. Smith

To Company:           American Heritage Life Insurance Company
                      76 South Laura Street
                      Jacksonville, Florida 32202

                      Attn:  Howard Taylor

IN WITNESS WHEREOF, AHL and SRI have caused this Agreement to be executed, in triplicate by their respective officers duly authorized to do so, and their respective seals to be affixed as of the dates shown hereafter.

Signed and sealed at Jacksonville, Florida, on this  10  day of
_Octber_, 19_91_.

Attest:                               AMERICAN HERITAGE LIFE INSURANCE COMPANY

_____(Seal)
                          Title      By: _____
                                         HOWARD D. TAYLOR
                                         ASSISTANT VICE PRESIDENT

Attest:                               SOUTHWEST REINSURE, INCORPORATED

_____(Seal)
                          Title      By: _____
                                         JAMES B. SMITH
                                         PRESIDENT

**EXHIBIT I**

This exhibit is attached to and made a part of Service Agreement effective May 1, 1990, between American Heritage Life Insurance Company and SRI.

All individual certificates issued by AHL and group policies of credit life and credit accident and health insurance and all individual policies of credit life insurance and credit accident and health insurance designated by American Heritage Life Insurance Company Form Numbers as follows:

Form Numbers:

Connecticut

ICL-DEC/L-CT (5/81) – LIFE (INDIVIDUAL POLICY)
ICL-D/NPE-CT (6/81) – DISABILITY (INDIVIDUAL POLICY)

ICL-2102-CT (1/91) – LIFE (INDIVIDUAL POLICY)
ICD-2102-CT (1/91) – DISABILITY (INDIVIDUAL POLICY)
ICD-2103-NPRE-CT (1/91) DISABILITY (NO PRE-EXCLUSION INDIVIDUAL POLICY)

California

P-2018-CA (6/88) – INDIVIDUAL POLICY

Arizona

H-2051-AZ (5/89) – GROUP POLICY
C-2051-AZ (5/89) – GROUP CERTIFICATE

## EXHIBIT I

This exhibit is attached to and made a part of the Service Agreement effective May 1, 1990 between American Heritage Life Insurance Company and Southwest Reinsure, Inc.

The following is a list of the Reinsurers and their respective Creditor/Policyholder accounts:

| Reinsurer<br>Creditor/Policyholder | Producer Number |
|---|---|
| **A and H Insurance Company, Ltd.** | |
| World Car Center | TC817101 |
| World Car Mazda | TC817102 |
| **ADD Insurance Company, Ltd.** | |
| Town & Country Chevrolet Olds. | TC777101 |
| Airport Chevrolet GEO | TC777102 |
| **Associated Dealers, Ltd.** | |
| Carr East | TC837202 |
| Carr Chevrolet | TC837201 |
| **Bickmore Life Insurance Company, Ltd.** | |
| Bryan Bickmore Dodge | TC807201 |
| Gresham Ford | TC807202 |
| **Big Country Life Insurance Company, Ltd.** | |
| Big Country Ford | TC557101 |
| **Carcharodon Reinsurance Company, Ltd.** | |
| Whittier Chrysler Plymouth | TC517301 |
| Whittier Dodge | TC517302 |
| **Clarke Reinsurance Services, Ltd.** | |
| William Clarke LM Hyundai | TC517230 |
| **CS, Ltd.** | |
| Saturn of Wallingford | TC527102 |
| Saturn of Branford | TC527103 |
| Executive Auto Group | TC527101 |
| **D.A.K. Reinsurance Company, Ltd.** | |
| Lee Chevrolet | TC517115 |
| **DKNS Reinsurance Company, Ltd.** | |
| Quality Chevrolet GEO | TC517215 |
| **Doten Insurance Company** | |
| Jim Doten's Honda | TC517214 |
| **Encantado Life Insurance Company, Ltd.** | |
| Sauter Lincoln Mercury | TC657101 |
| **Ever Ready Insurance Company, Ltd.** | |
| Pollard Friendly Motors | TC717101 |
| **G & I Insurance Company, Ltd.** | |
| Horizon Honda Mazda | TC877201 |
| Big Valley 4x4 Center | TC877202 |
| **Galles Life Insurance Company, Ltd.** | |
| Galles Chevrolet | TC607105 |
| Saturn of Albuquerque | TC607104 |
| **Garcia Life Insurance Company, Ltd.** | |
| Garcia Honda | TC577101 |
| Garcia Toyota | TC577103 |
| Garcia Volvo-Suzuki | TC577102 |

General Marketing Insurance Company, Ltd.
    Lamb Chevrolet                         TC517102 (AZ)
                                        TC007101 (NM)

GEO Life Insurance Company, Ltd.
    Guaranty Chevrolet                     TC517125

Gresal Life Reinsurance Company, Ltd.
    Courtesy Honda (aka Courtesy Auto Imports)    TC557102

Horizon Life Insurance Company
    Fiesta Lincoln Mercury               TC597101
    San Marcos Nissan                 TC597102
    Sunland Ford                     TC597103
    Bob Turners Ford Country           TC597104
    Rich Mazda                      TC597105
    Richardson Ford Sales             TC597106

Inter-West Life Insurance Company, Ltd.
    Horace Nissan                  TC547103
    Santa Fe Dodge                TC547102
    Joe Horace CPD of Santa Fe       TC547101

Larry Ewers Insurance Company, Ltd.

Medford Reinsurance Company, Ltd.
    Lithia Honda Pontiac               TC517111
    Lithia's Grants Pass AM           TC517108
    Lithia Dodge Chrysler            TC517112
    Lithia Toyota LM                TC517110
    Saturn of Southwest Oregon       TC517116

Nichols Insurance Company, Ltd.
    [illegible] Motors                   TC[illegible]01

Nissan-Mitsu Insurance Company, Ltd.
    Aurora Mitsubishi                TC847202
    Olympia Chrysler-Plymouth-Nissan   TC847203
    Burien Nissan                  TC847201

Northcoast Insurance Company, Ltd.
    Bob Benson Acura               TC517104

Northeast Reinsurance Company, Ltd.
    Gates GMC Truck, Inc.          TC517216
    Columbia Ford                TC517217

Pecos Valley Life Insurance Company, Ltd.
    Richard Barton Toyota           TC887101

R&A Wheels Insurance Company, Ltd.
    Southern OR Volvo Mitsubishi      TC777103

Rainier Insurance Company, Ltd.
    Hinshaw's Honda               TC867201
                                    TC867202

Redwood National Insurance Company, Ltd.
    Bob Benson Honda             TC517103

Rio Grande Security Life Insurance Company, Ltd.
    Lee Galles Olds                TC607101
    Galles On Central             TC607102
    Galles Lexus                 TC607103

Romania Insurance Company, Ltd.
    Romania Hyundai-Imports        TC817201
    Romania Chevrolet             TC817202

Rosemary Life Insurance Company, Ltd.
    Dwayne Lane Chrysler           TC857201
    Dwayne Lane Dodge            TC857202
    Dwayne Lane Arlington Chevrolet GEO   TC857203

Sandia Life and Casualty Insurance Company, Ltd.
| | |
|---|---|
| Capitol Nissan Volvo | TC517220 |
| Capitol Toyota | TC517219 |
| Chuck Obershaw's Toyota of San Bernardino | TC517228 |
| Falconi's Motors | TC517209 |
| Falconi's Motors | TC517210 |
| Gateway Motors | TC517212 |

Sapello Insurance Company, Ltd.
| | |
|---|---|
| Highland Ford Sales | TC587101 |

Seminole Life Insurance Company, Ltd.
| | |
|---|---|
| Bobby Trent Motorplex | TC727101 |

Sisbarro Life Insurance Company, Ltd.
| | |
|---|---|
| Sisbarro Autoworld | TC847102 |
| Sisbarro Buick Pontiac | TC847101 |

Stagecoach Life Insurance Company, Ltd.
| | |
|---|---|
| Fisher Vincent Ford | TC537101 |

Sun Mesa Life Insurance Company, Ltd.
| | |
|---|---|
| Gonzales Motors CP | TC567101 |

Sunland Life Insurance Company, Ltd.
| | |
|---|---|
| Sunland Ford | TC597103 |

Teague-Strebeck Insurance Company, Ltd.
| | |
|---|---|
| Teague-Strebeck Jeep Eagle | TC627103 |
| Teague-Strebeck Motors | TC627101 |
| Teague Strebeck Chev/Geo | TC627102 |
| Pick 'o Country | TC627104 |
| ...... ... ...... Autoplex | TC627105 |

The Atlantic Insurance Company, Ltd.
| | |
|---|---|
| Park Pontiac GMC, Inc. | TC767101 |
| | TC767101 |

University Life Insurance Company, Ltd.
| | |
|---|---|
| University Volkswagen | TC637101 |

Westhills Insurance Company, Ltd.
| | |
|---|---|
| Today Chevrolet | TC827202 |
| Westhills Honda | TC827201 |
| Haselwood Buick GMC | TC827204 |
| Lexus of Bellevue | TC827206 |
| Acura of Seattle | TC827203 |
| Heartland Toyota | TC827208 |
| Bellevue Pre-Owned Cars | TC827207 |
| Infiniti of Southcenter | TC827205 |

EXHIBIT II

This exhibit is attached to and made a part of Service Agreement effective
May 1, 1990 between American Heritage Life Insurance Company and SRI.

Claim Payment Standards

1. All claim papers will be date stamped upon receipt.
2. All claims will be assigned a sequential claim number.   The form and
   sequence of said number shall be approved by AHL.
3. All claims will be listed, in sequential claim number order, in a Claims
   Register which shall include - claim number, policy number, insured's
   name, date claim opened, date claim closed, reason denied.
4. SRI  shall  provide  a  courteous  written  response  to  all  group
   policyholder's and/or insureds' inquiry within five (5) working days.
5. All.denied claims will be reviewed by qualified claim examiners and the
   benefit worksheet will include the signature of the examiner and date
   reviewed.
6. All claim files and comments will be secured and available only to
   persons who have a need to know to accomplish the claim review process.
7. Maintain a Time Service Standard of no more than five (5) working days on
   all claims after receipt of all necessary documents.
8. Complete and maintain a Complaint Record on all written complaints
   received from insureds, group policyholders, agents, interested third
   parties and/or insurance departments.

## EXHIBIT III

This exhibit is attached to and made a part of the Service Agreement effective May 1, 1990 between American Heritage Life Insurance Company (AHL) and Southwest Reinsure, Inc. (SRI).

It is hereby agreed that from the total ceding commission collected by Colonial Reinsurance, Ltd. from the Reinsurers which are listed in Exhibit IV, a fee will be deducted by Colonial Reinsurance, Ltd. and retained as the service fee, according to the staggered schedule shown below. The remainder of the ceding commission will be payable to SRI as the service fee.

### Staggered Schedule

| Calendar Year Net Written Premiums | Fee Percentage |
|---|---|
| $      0 - $  500,000 | 4.0% |
| 500,001 -  1,000,000 | 3.5% |
| 1,000,001 -  2,000,000 | 3.0% |
| 2,000,001 and over | 2.5% |

Example:

If Calendar Year Net Written Premiums are $2,000,000, the fronting fee will be computed as follows:

| | | |
|---|---|---|
| The first $500,000  @4.0% | = | .$20,000 |
| the next $500,000   @3.5% | = | 17,500 |
| the next $1,000,000 @3.0% | = | 30,000 |
| Total Fee for $2,000,000 | = | $67,500 |
| Effective rate for $2,000,000 | = | 3.38% |

AMERICAN HERITAGE LIFE INSURANCE COMPANY

Name _____

Title _____

SOUTHWEST REINSURE, INCORPORATED

Name _____

Title _____

EXHIBIT IV

This exhibit is attached to and made a part of the Service Agreement effec-
tive May 1, 1990 between American Heritage Life Insurance Company and South-
west Reinsure, Inc.

The following is a list of the Reinsurers and their respective Creditor/-
Policyholder accounts:

| Reinsurer Creditor/Policyholder | Producer Number | Total Ceding Commission Life | Disability |
|---|---|---|---|
| A & W Insurance Co., Ltd. B & L Chevrolet 1416 Post Road Darien, CT 06820 | TC517101 | 8% | 8% |
| General Marketing Inc., Co. Ltd. Lamb Chevrolet 828 Gale Gardner Way Prescott, AZ 86301 | TC517102 | 8% | 8% |
| Redwood Insurance Co., Ltd. Bob Benson Honda 4246 Petaluma Blvd., N. Petaluma, CA 94952 | TC517103 | 15% | 15% |
| Bob Benson Acura 3001 Corby Avenue Santa Rosa, CA 95407 | TC517104 | 15% | 15% |
| Sandia Life & Casualty Ins. Co. Ltd Rule Dale Hyundai/Mitsubishi 931 McHenry Avenue Modesto, CA 95350 | TC517105 | 12% | 22% |
| Rule Dale Auto Plaza 3737 McHenry Avenue Modesto, CA 95356-1583 | TC517106 | 12% | 22% |
| Herb Hallman, Inc. dba Champion Chevrolet 800 Kietzke Lane Reno, NV 89502 | TC517107 | 12% | 12% |
| Medford Lithia Insurance Co., Ltd. Lithia's Grants Pass Auto Mart 1421 NE 6th Street Grants Pass, OR 97526 | TC517108 | 7.5% | 7.5% |
| Lithia Pontiac Mazda Jeep Eagle 225 South Riverside Medford, OR 97501 | TC517109 | 7.5% | 7.5% |
| Lithia Toyota Lincoln Mercury 360 East Jackson Medford, OR 97501 | TC517110 | 7.5% | 7.5% |
| Lithia Honda Suzuki 700 North Central Medford, OR 97501 | TC517111 | 7.5% | 7.5% |
| Lithia Dodge Chrysler Plymouth 324 East 5th Street Medford, OR 97501 | TC517112 | 7.5% | 7.5% |

**EXHIBIT IV**
(Revised 8/20/94)

This exhibit is attached to and made a part of the Service Agreement effective May 1, 1990 between American Heritage Life Insurance Company and Southwest Reinsure, Inc.

The following is a list of the Reinsurers and their respective Creditor/Policyholder accounts:

| Reinsurer Creditor/Policyholder | Producer Number |
|---|---|
| **A and H Insurance Company, Ltd.** | |
| World Car Center | TC617101 |
| World Car Mazda | TC617102 |
| **ADD Insurance Company, Ltd.** | |
| Town & Country Chevrolet Olds. | TC777101 |
| Airport Chevrolet GEO | TC777102 |
| **Associated Dealers, Ltd.** | |
| Carr East | TC837202 |
| Carr Chevrolet | TC837201 |
| **Bickmore Life Insurance Company, Ltd.** | |
| Bryan Bickmore Dodge | TC807201 |
| Gresham Ford | TC807202 |
| **Big Country Life Insurance Company, Ltd.** | |
| Big Country Ford | TC557101 |
| **Carca? ?ah Reinsurance Company, Ltd.** | |
| Whittier Chrysler Plymouth | TC517301 |
| Whittier Dodge | TC517302 |
| **Clarke Reinsurance Services, Ltd.** | |
| William Clarke LM Hyundai | TC517230 |
| **CS, Ltd.** | |
| Saturn of Wallingford | TC527102 |
| Saturn of Branford | TC527103 |
| Executive Auto Group | TC527101 |
| **D.A.K. Reinsurance Company, Ltd.** | |
| Lee Chevrolet | TC517115 |
| **DKNS Reinsurance Company, Ltd.** | |
| Quality Chevrolet GEO | TC517215 |
| **Doten Insurance Company** | |
| Jim Doten's Honda | TC517214 |
| **Encantado Life Insurance Company, Ltd.** | |
| Sauter Lincoln Mercury | TC657101 |
| **Ever Ready Insurance Company, Ltd.** | |
| Pollard Friendly Motors | TC717101 |
| **G & I Insurance Company, Ltd.** | |
| Horizon Honda Mazda | TC877201 |
| Big Valley 4x4 Center | TC877202 |
| **Galles Life Insurance Company, Ltd.** | |
| Galles Chevrolet | TC807105 |
| Saturn of Albuquerque | TC807104 |
| **Garcia Life Insurance Company, Ltd.** | |
| Garcia Honda | TC577101 |
| Garcia Toyota | TC577103 |
| Garcia Volvo-Suzuki | TC577102 |

General Marketing Insurance Company, Ltd.
   Lamb Chevrolet                               TC517102 (AZ)
                                              TC007101 (NM)

GEO Life Insurance Company, Ltd.
   Guaranty Chevrolet                               TC517125

Gresal Life Reinsurance Company, Ltd.
   Courtesy Honda (aka Courtesy Auto Imports)   TC557102

Horizon Life Insurance Company
   Fiesta Lincoln Mercury                         TC597101
   San Marcos Nissan                             TC597102
   Sunland Ford                                 TC597103
   Bob Turners Ford Country                   TC597104
   Rich Mazda                                   TC597105
   Richardson Ford Sales                       TC597106

Inter-West Life Insurance Company, Ltd.
   Horace Nissan                               TC547103
   Santa Fe Dodge                            TC547102
   Joe Horace CPD of Santa Fe                TC547101

Larry Ewers Insurance Company, Ltd.

Medford Reinsurance Company, Ltd.
   Lithia Honda Pontiac                         TC517111
   Lithia's Grants Pass AM                    TC517108
   Lithia Dodge Chrysler                     TC517112
   Lithia Toyota LM                           TC517110
   Saturn of Southwest Oregon                TC517116

Nichi... ... .... Company, Ltd

                                            ... ....

Nissan-Mitsu Insurance Company, Ltd.
   Aurora Mitsubishi                             TC847202
   Olympia Chrysler-Plymouth-Nissan      TC847203
   Burien Nissan                               TC847201

Northcoast Insurance Company, Ltd.
   Bob Benson Acura                            TC517104

Northeast Reinsurance Company, Ltd.
   Gates GMC Truck, Inc.                   TC517218
   Columbia Ford                             TC517217

Pecos Valley Life Insurance Company, Ltd.
   Richard Barton Toyota                    TC687101

R&A Wheels Insurance Company, Ltd.

Doten Insurance Company
   Jim Doten's Honda                           TC517214

Encantado Life Insurance Company, Ltd.
   Sauter Lincoln Mercury                  TC657101

Ever Ready Insurance Company, Ltd.
   Pollard Friendly Motors                  TC717101

G & I Insurance Company, Ltd.
   Horizon Honda Mazda                   TC877201
   Big Valley 4x4 Center                   TC877202

Galles Life Insurance Company, Ltd.
   Galles Chevrolet                          TC607105
   Saturn of Albuquerque                  TC607104

Garcia Life Insurance Company, Ltd.
   Garcia Honda                             TC577101
   Garcia Toyota                           TC577103
   Garcia Volvo-Suzuki                   TC577102

Sandia Life and Casualty Insurance Company, Ltd.

| | |
|---|---|
| Capitol Nissan Volvo | TC517220 |
| Capitol Toyota | TC517219 |
| Chuck Obershaw's Toyota of San Bernardino | TC517228 |
| Falconi's Motors | TC517209 |
| Falconi's Motors | TC517210 |
| Gateway Motors | TC517212 |

Sapello Insurance Company, Ltd.

| | |
|---|---|
| Highland Ford Sales | TC587101 |

Seminole Life Insurance Company, Ltd.

| | |
|---|---|
| Bobby Trent Motorplex | TC727101 |

Sisbarro Life Insurance Company, Ltd.

| | |
|---|---|
| Sisbarro Autoworld | TC847102 |
| Sisbarro Buick Pontiac | TC847101 |

Stagecoach Life Insurance Company, Ltd.

| | |
|---|---|
| Fisher Vincent Ford | TC537101 |

Sun Mesa Life Insurance Company, Ltd.

| | |
|---|---|
| Gonzales Motors CP | TC587101 |

Sunland Life Insurance Company, Ltd.

| | |
|---|---|
| Sunland Ford | TC597103 |

Teague-Strebeck Insurance Company, Ltd.

| | |
|---|---|
| Teague-Strebeck Jeep Eagle | TC827103 |
| Teague-Strebeck Motors | TC627101 |
| Teague Strebeck Chev/Geo | TC627102 |

The Atlantic Insurance Company, Ltd.

| | |
|---|---|
| Park Pontiac GMC, Inc. | TC767101 |
| | TC767101 |

University Life Insurance Company, Ltd.

| | |
|---|---|
| University Volkswagen | TC637101 |

Westhills Insurance Company, Ltd.

| | |
|---|---|
| Today Chevrolet | TC827202 |
| Westhills Honda | TC827201 |
| Haselwood Buick GMC | TC827204 |
| Lexus of Bellevue | TC827208 |
| Acura of Seattle | TC827203 |
| Heartland Toyota | TC827208 |
| Bellevue Pre-Owned Cars | TC827207 |
| Infiniti of Southcenter | TC827205 |

Case 3:08-cv-01255-HLA-MCR    Document 1    Filed 12/31/08    Page 39 of 47    PageID 39

MA  11-97 MON 13:24    AHL CREDIT DIV    FAX NO. 9049922782    Case 1:07-cv-01146-BRB-RHS    Document 55-2    Filed 12/11/2008    Page 20 of 28    P. 02

## SERVICE AGREEMENT

### Amendment No. 1

Effective November 1, 1991, the Service Agreement between American
Heritage Life Insurance Company and Southwest Reinsure, Incorporated
is amended as follows:

Paragraph 11.05 shall read:

> "The cost for the printing and shipping of policies and
> certificates provided to SRI by AHL, pursuant to para-
> graph 5.06 of this agreement, shall be billed to SRI.
> SRI shall provide all other forms, stationery or mate-
> rials at SRI's expense."

All other terms and conditions remain unchanged.

AMERICAN HERITAGE LIFE INSURANCE COMPANY

_Howard D. Taylor_
Name

_Assistant Vice President_
Title

SOUTHWEST REINSURE, INCORPORATED

_James S Smith_
Name

_President_
Title

## SERVICE AGREEMENT

## AMENDMENT NO. 2

Effective November 1, 1991, the Service Agreement between AMERICAN HERITAGE LIFE

INSURANCE COMPANY and SOUTHWEST REINSURE, INCORPORATED is hereby

amended to add the following clause:

Paragraph 12.05 shall read:

> American Heritage Life shall provide fifteen (15) days written notice to the State
>
> of Arizona, Director of Insurance, of termination or cancellation or any other
>
> change in this Agreement.

All other terms and conditions of this Agreement remain unchanged.

**AMERICAN HERITAGE LIFE INSURANCE COMPANY**

_____
HOWARD D. TAYLOR

_____
TITLE

**SOUTHWEST REINSURE, INCORPORATION**

_____
NAME

_____
TITLE

Reporting Number: <u>TC-000000</u>

## AMERICAN HERITAGE LIFE INSURANCE COMPANY
### Jacksonville, Florida

### AMENDMENT TO SERVICE AGREEMENT

### AMENDMENT NO. 3(A)

The Service Agreement Amendment No. 3 dated September between AMERICAN HERITAGE LIFE INSURANCE COMPANY, therein called "AHL" and SOUTHWEST REINSURE, INCORPORATED, therein called "SRI" is hereby modified by this Amendment effective January 2, 2003 because of the following:

Amendment No 3 dated September 1, 1995 did not include a signature from First Colonial Insurance Company. This Amendment adds that signature.

This Amendment shall modify only those portions of the Service Agreement or previous Amendments thereof which are inconsistent with this Amendment.

**IN WITNESS WHEREOF,** this Amendment has been executed.

<u>SOUTHWEST REINSURE, INCORPORATED</u>
AGENT

BY _____   DATED ___1/8/03___
Robert W. Price, President

<u>AMERICAN HERITAGE LIFE INSURANCE COMPANY</u>
COMPANY

BY _____   DATED ___January 7, 2003___
Howard D. Taylor, Vice President

<u>FIRST COLONIAL INSURANCE COMPANY</u>
COMPANY

BY _____   DATED ___January 7, 2003___
Howard D. Taylor, Vice President

Reporting Number:   TC-000000

## AMERICAN HERITAGE LIFE INSURANCE COMPANY
Jacksonville, Florida

## AMENDMENT TO SERVICE AGREEMENT

## AMENDMENT NO. 3

The Service Agreement dated May 1, 1990 between AMERICAN HERITAGE LIFE INSURANCE COMPANY, therein called "AHL" and SOUTHWEST REINSURE, INCORPORATED, therein called "SRI", is hereby modified by this Amendment effective September 1, 1995 to provide the following:

The Service Agreement is amended to apply First Colonial Insurance Company as well as American Heritage Life Insurance Company.

This Amendment shall modify only those portions of the Service Agreement or previous Amendments thereof which are inconsistent with this Amendment.

**IN WITNESS WHEREOF,** this Amendment has been executed.

| SOUTHWEST REINSURE, INCORPORATED | AMERICAN HERITAGE LIFE INSURANCE CO. |
|---|---|
| AGENT | COMPANY |
| BY _James J Smith_ | BY _Howard D. Taylor_ |
| JAMES B. SMITH | HOWARD D. TAYLOR |
| PRESIDENT | VICE PRESIDENT |
| DATED  10/1/95 | DATED  8/1/95 |

Reporting Number:   __TC-000000__

# AMERICAN HERITAGE LIFE INSURANCE COMPANY
Jacksonville, Florida

## AMENDMENT TO SERVICE AGREEMENT

### AMENDMENT NO. 4

The Service Agreement dated May 1, 1990 between AMERICAN HERITAGE LIFE INSURANCE COMPANY, therein called "AHL" and SOUTHWEST REINSURE, INCORPORATED, therein called "SRI", is hereby modified by this Amendment effective September 1, 1995 to provide the following:

1.   Paragraph 3.06 is changed to read: "SRI shall advise AHL of claim activity within 30 days of action.  This includes new claims, payments, denials and closures."

This Amendment shall modify only those portions of the Service Agreement or previous Amendments thereof which are inconsistent with this Amendment.

**IN WITNESS WHEREOF,** this Amendment has been executed.

SOUTHWEST REINSURE, INCORPORATED   AMERICAN HERITAGE LIFE INSURANCE CO.
              AGENT                              COMPANY

BY _____         BY _____
    JAMES B. SMITH                        HOWARD D. TAYLOR
    PRESIDENT                             VICE PRESIDENT

DATED___10/r/95_____                DATED____8/1/95_____

Reporting Number:   __TC-000000__

## AMERICAN HERITAGE LIFE INSURANCE COMPANY
Jacksonville, Florida

### AMENDMENT TO SERVICE AGREEMENT

### AMENDMENT NO. 5

The Service Agreement dated May 1, 1990 between AMERICAN HERITAGE LIFE INSURANCE COMPANY, therein called "AHL" and SOUTHWEST REINSURE, INCORPORATED, therein called "SRI", is hereby modified by this Amendment effective September 1, 1995 to provide the following:

1.  Paragraph 12.01 shall be changed to add as the second sentence: "In case of a dispute on the cause of termination, SRI will cease underwriting activities until such dispute is resolved."

2.  Paragrah 12.05 shall be added: "Notice of intended termination shall be provided to any state requiring such notice within at least 30 days of such termination."

3.  Paragragh 13.01 shall be changed to delete: "...with first class postage prepaid, and deposited in the mail as follows:" and add, "...and sent by certified mail to the addressee as follows:"

This Amendment shall modify only those portions of the Service Agreement or previous Amendments thereof which are inconsistent with this Amendment.

**IN WITNESS WHEREOF,** this Amendment has been executed.

SOUTHWEST REINSURE, INCORPORATED    AMERICAN HERITAGE LIFE INSURANCE CO.
            AGENT                                        COMPANY

BY _____         BY _____
   JAMES B. SMITH                        HOWARD D. TAYLOR
   PRESIDENT                             VICE PRESIDENT

DATED _10/1/95_____           DATED _8/1/95_____

Case 3:08-cv-01255-HLA-MCR   Document 1   Filed 12/31/08   Page 45 of 47 PageID 45
Case 1:07-cv-01146-BRB-RHS   Document 55-2   Filed 12/11/2008   Page 26 of 28
JUN. 5.1997  10:37AM   SOUTHWEST REINSURE                    NO.868  P.2/2

**AMERICAN HERITAGE LIFE INSURANCE COMPANY**
Jacksonville, Florida

AMENDMENT TO SERVICE AGREEMENT

AMENDMENT NO. 6

The Service Agreement dated May 1, 1990 between AMERICAN HERITAGE LIFE
INSURANCE COMPANY, therein called "AHL" and SOUTHWEST REINSURE,
INCORPORATED, therein called "SRI", is modified by this Amendment effective June 5, 1997
to provide the following:

1.    Paragraph 4.01 is changed to read: "SRI will maintain at its principal administrative
      office for the duration of this written agreement and six (6) years thereafter adequate
      books and records of all transactions between it, AHL and insured persons. Such books
      and records shall be maintained in accordance with prudent standards of insurance
      record keeping. Such books and records shall remain the sole property of AHL."

This Amendment shall modify only those portions of the Service Agreement or previous
Amendments thereof which are inconsistent with this Amendment.

IN WITNESS WHEREOF, this Amendment has been executed.

SOUTHWEST REINSURE, INC.          AMERICAN HERITAGE LIFE INSURANCE CO.
AGENT                             COMPANY

BY _____        BY _____
   JAMES B. SMITH                    HOWARD D. TAYLOR
   PRESIDENT                         VICE PRESIDENT

DATED _____6/5/97_____           DATED __June 5, 1997__

# American Heritage Life Insurance Company
### Jacksonville, Florida

## AMENDMENT TO SERVICE AGREEMENT

## AMENDMENT NO. 7

The Service Agreement dated May 1, 1990 between AMERICAN HERITAGE LIFE INSURANCE COMPANY, therein called "AHL" and SOUTHWEST REINSURE INCORPORATED, therein called "SRI", is modified by this Amendment effective August 1, 1997 to provide the following for all business produced in the state of Montana and other state requiring such action:

1) **Collection of charges and premiums.** (1) All insurance charges or premiums collected by SRI on behalf of or for AHL and return premiums received from AHL are held by SRI in a fiduciary capacity. These funds must be immediately remitted to the person entitled to them or must be deposited promptly in a fiduciary bank account established and maintained by SRI. If deposited charges or premiums were collected in behalf of or for more than one insurer, SRI shall require the bank in which the fiduciary account is maintained to keep records clearly recording the deposits in and withdrawals from the account on behalf of or for each insurer. SRI shall promptly obtain and keep copies of all these records and, upon request of an insurer, shall furnish the insurer with copies of the records pertaining to deposits and withdrawals on behalf of or for the insurer. (2) SRI may not pay a claim by withdrawals from the fiduciary account. Withdrawals from the fiduciary account must be made, as provided in written agreement between SRI and AHL for:
   (a) remittance to AHL;
   (b) deposit in an account maintained in the name of AHL;
   (c) transfer to and deposit in a claims paying account, with claims to be paid as provided in paragraph (3);
   (d) payment to a group policyholder for remittance to AHL
   (e) payment to SRI of its commission, fees, or charges; or remittance of return premiums to the person entitled to the premium.

2) **Treatment of payments.** AHL and SRI agree that the payment to the SRI of any premiums or charges for insurance by or on behalf of the insured is considered to be received by AHL and the payment of return premiums or claims by AHL to SRI is not considered payment to the insured or claimant until the payments are received by the insured or claimant. AHL and SRI agree that nothing herein shall limit any right of AHL against SRI resulting from SRI's failure to make payments to AHL, insured, or claimants.

3) **Payment of claims.** All claims paid by SRI from funds collected on behalf of AHL shall be paid only on drafts of and as authorized by such insurer.

4) **Delivery of documents.** Any policies, certificates, booklets, termination notices, or other written communications delivered by AHL to SRI for delivery to its policyholders shall be delivered by SRI promptly after receipt of instructions from AHL to do so.

5) **Claim adjustment and settlement.** With respect to any policies where SRI adjusts or settles claims, the compensation to SRI with regard to the policies shall in no way be contingent on claim experience. This section does not prevent the compensation of SRI from being based on premiums or charges collected or number of claims paid or processed.

This Amendment shall modify only those portions of the Service Agreement or previous Amendments thereof which are inconsistent with this Amendment.

**IN WITNESS WHEREOF,** this Amendment has been executed.

<u>SOUTHWEST REINSURE, INC,</u>
Agent

BY: *James J. Smith*
JAMES B. SMITH
PRESIDENT

DATED: 7-24-00

<u>AMERICAN HERITAGE LIFE INSURANCE COMPANY</u>
Company

BY: *Howard D. Taylor*
HOWARD D. TAYLOR
VICE PRESIDENT

DATED: 7/10/00